Appeal 2006-1562. Before we start the argument, I want to announce on behalf of the Court that under the relevant statute found at 28 U.S.C., Section 46C, Senior Judge Glenn L. Archer will be part of the in-bank court at his election, so it's a 13-judge court even though only 12 people are on the bench today. Judge Archer will be reviewing the arguments from our recording, but will not participate live in this proceeding or the ensuing conference. With that, Mr. Oak, welcome to the Court. Please proceed. I understand you're reserving 10 minutes for rebuttal time. When the yellow light goes on, you're beginning to consume that 10 minutes. May it please the Court. My name is Robert Oak, and I represent the Egyptian Goddess. Thank you for accepting this case for an unmarked reward. The Court's first question is, should point of novelty be a test for infringement of a design pattern? When you get beyond one simple design, what do you do with a complex furniture design with lots of lion's feet and heads all looking different directions, slight variations? What would be the point of novelty, and how would you apply the test in a complex design? My answer is that point of novelty should not be a test for design. This is what I asked you. I'm asking you, what do you do with it when you have that situation? Well, what you would do is determine—first of all, you have a situation where you're comparing an accused device to a patented design. And the question would be whether the accused device, the substantial overall appearance of the accused design— What is going to be the point of novelty when you have a complex design with many, many little points that may be different from the prior art? That is the problem with the point of novelty test. You cannot determine it. It's impossible to determine when you have many complex designs. But the patentee would have the obligation to select one, wouldn't they? Well, if this Court continues with the point of novelty test, then yes, the patentee would have an obligation to select one, but— Is that fair to the patentee? Well, the patentee, of course, must follow this Court's rules of law. And, you know, in that situation, the patentee would obviously select a point of novelty that was found in the accused device, and the defendant would probably select one that is not. And then it would be up to either a fact finder or a court to decide if the point of novelty was correct. But, again, there are so many problems with the point of novelty test that there is not— Why doesn't it work perfectly well for this case when there does appear to be a single point of novelty, and it does seem to help the Court bridle what would otherwise be a very indeterminate, ordinary observer test? Well, the district court in this case determined that there was a single point of novelty, a foresight without a pad. But I would argue that was the result of linguistic—I hate to use the word manipulation, but that's exactly what happened, because actually there were two distinct points of novelty. Mr. Roque, we've asked whether we should continue to follow the point of novelty test. But aren't we bound by Smith v. Whitman-Saddle, which the Supreme Court in 1893 essentially applied a point of novelty test? Well, first of all— That was after the Gorham case. So, obviously, the Court had intended the two to work together. Yes, Your Honor. Well, first of all, this Court is, of course, bound by Supreme Court authority. But the question is, what does this Whitman-Saddle case mean? And it does not use or express a point of novelty test. Well, it doesn't use those words, but it certainly applied the concept. It talked about what was new and material and said, lacking that, there was no infringement. Well, but the key concept, I think, in Whitman-Saddle—and again, we perhaps want to put Whitman-Saddle in context before we talk about the specific language, but going directly to the answer to your question— Whitman-Saddle never identified a specific individual point of novelty without also taking into consideration the effect that that individual new point had on distinguishing the overall appearance of the saddle for the firearm. You view Whitman-Saddle as applying what's come to be known as the three-way test? Well, I don't know that it applies the three-way test, but I think if you apply the three-way test—I mean, you can apply the three-way test any time that you have a patented design, an accused design, a firearm. You're in favor of the three-way test, right? I think that the three-way test is helpful, will be helpful to a jury in understanding how to apply the infringement test. I do. I think it's a supplemental test, and I think the more tests you have, the more different ways you have of looking and comparing the two designs, the better it is. In your—you propose a test in which you cite that the appropriation by the accused design of the, quote, distinctive overall visual appearance that makes the patented design distinctive over the prior art. Can you articulate the difference between the novel elements versus the distinctive overall visual appearance? Because the novel element seems to me to be the point of novelty test, so what's the difference between novel elements and distinctive overall visual appearance? The difference is that in the point of novelty test, you are looking at points of novelty independently without considering the effect that they have on distinguishing the overall design from the prior art. And in the proper test, which I believe is in Gorham and is expressly discussed in Applied Arts, that test expressly states that. You look at the overall distinctive appearance of the—when comparing the patented and accused designs, and you don't just pick out individual points of novelty without considering the overall distinctive appearance. Isn't the Gorham test really one in which the Supreme Court specifically looked at the observer, the ordinary observer, and the ordinary observer was confused by the product and there was infringement? Is that really an ordinary observer type of a test? I think so, Your Honor, because, of course, the ordinary observer is an objective standard. And the ordinary observer, as an objective standard, would have in their mind as they're making the comparison all of the prior—maybe not all of the prior art, but certain relevant prior art. And so it is an objective standard. How is it an objective standard? There are no guidelines. Well, that particular part— And isn't that what point of novelty constitutes, a guideline? Well, first of all, let me say that increasing objectivity in this area of law is our greatest challenge. There's no question about it. But we don't want to go to rigid formulaic tests. We need to retain flexible standards. And the ordinary observer test is a flexible standard. It is objective because you've got an objective person that you define as having in mind certain relevant prior art, and then when they compare the accused design and the patented design, they do that with that mental framework in mind. Is the point of novelty a question of interpretation for the court, or is it a question of fact? I would say it's a question of fact. And how would the fact finder determine the point of novelty? Well, again, I think it's extremely difficult to do that, and that's why I am arguing that the point of novelty test should be abandoned because of all the difficulties. Can there be more than one point of novelty? Certainly there can be, and that's one of the problems, particularly when you have two—when you're comparing two designs and you have multiple pieces of prior art, you can have different points of novelty, combination points of novelty, subsets of combinations of points of novelty. You said there were two in this case? What are the two points in this case? Well, there are several ways to describe the points of novelty in this case. It depends on what pieces of prior art that you're considering and what comparison that you're making. The trial court only compared the patented buffer against one piece of prior art. We thought that was wrong, but that's what he did. And the two differences were the square cross-section and then the lack of a buffer pad on the foreside, which the trial court collapsed improperly, we believe, into a single point of novelty. But different points of novelty could have been determined based upon what other prior art the patented buffer was compared to. Counsel, I'd like to bring you back to Judge Prost's question because her question is something that's troubling me. IPO, Nike, a number of amicus briefs have articulated a standard or a test that they think we ought to apply, which I think seems to track Gorham, and then whether or not the prior art, and this is closer to the prior art, is more like a defense to the infringement, which of course the patentee would bear the burden of proof across the board on infringement, but the production would switch back and forth. But you instead take a different approach, as I understand it, which is that you think there is this overall distinctive appearance test that evolves from Gorham, and like Judge Prost's question, mine to you is I'm having a difficult time seeing how it's any different from the point of novelty. Tell me in this particular case, if you could, how it is that the overall distinctive appearance, what about these things should I be looking at in terms of the overall distinctive appearance? I just don't see how it's any different than the point of novelty, so I want to give you a chance to help me understand that. Okay. The trial court determined that the point of novelty was a fourth side without a path. But we know Tammy Taylor has that, so that can't actually be a point of novelty, right? Well, that's correct, and that was an alternative argument that I had, but my primary point is that, see, that point of novelty was determined by the trial court without determining the overall effect that it had on the distinctive appearance of the patented buffer as opposed to the prior art. Let's talk about the Tammy Taylor, the square, and then the Nail Co., which was a triangular patent, and we contend that what made this patented buffer so distinctive from the prior art is because it had a rectangular or a square cross-section, and it had these raised buffer pads, which gave it a distinctive appearance. Now, the lack of a single buffer pad, we don't think, really affected the overall distinctive appearance from the prior art, and yet that's what the trial court focused on, and that is improper. You've got to somehow keep that link between the point that is pulled out for comparative purposes and the effect that it has on the overall distinctive appearance of the accused device in the patented design. So what I hear you telling us, which in many ways I think is correct, when you think of the enormous variety of designs, we've perhaps gotten ourselves into thinking about things too narrowly through uses of the word point. I think the cases that talked about points of novelty, in fact, there was a specific point, but in Gorham there was no specific point and nobody's ever challenged that there can't be novelty in an overall design, it's just trying to focus, and as you commented, trying to put into words something that is a picture, perhaps not subject to words. And so I think I'm not nearly as troubled by an apparent split between the design as a whole and trying to find the point, because the point of novelty cases really talk about what makes this design novel, rather than focusing on something more narrowly described. Stated a little differently, when the novelty is the combination of all of the elements, doesn't the test really collapse back into the ordinary observer's substantial similarity test? In effect it does, but that should not be a disqualification for choosing. I mean, it all depends on what is the point of novelty. If you're comparing the patented device against the prior art, and it just so happens that what makes it different from the prior art is the overall appearance, then that, if you're following the point of novelty test, then that would be the point of novelty, and there should be no principle reason why it should be disqualified just because it's the overall appearance. You don't like the point of novelty test. You've made that clear. But what's unclear to me is what you would substitute for. Some of the amici have suggested this three-way test. In other words, it's essentially a two-part test. The ordinary observer test for comparing it to the patented design, but then you also have to ask whether the accused design is more similar to the prior art or to the patented design. Do you favor that, or do you not favor that? I do favor that. I think that the proper approach here, just in sum, is to go back to the way that applied arts, in the applied arts case, interpreted the Gorham decision. And the way applied arts determined it is you start off with the broad proposition that, for infringement, the accused design must present the appearance or overall visual effect that distinguishes the patented design from the prior art, and then, as a supplement to that, to help the jury, and you can do it with jury instructions, you ask the practical test. And that is whether the accused design, and this is just one way to express it, you can express it in terms of differences or similarities, but whether the accused design differs from the patented design more widely than the patented design differs from the prior art. And if so, then infringement is unlikely. So that's a separate test from the ordinary observer test. I think it works in conjunction with it. It's a practical way of making the comparison, and it helps the jury decide. Is it more similar to the prior art or more similar to the patented design? That's right. In pre-Lytton, there was also this concept that when the prior art was crowded, then the objective ordinary observer made the comparison in a more discriminatory manner. And I think that's helpful as well. But when we come up to Lytton, what Lytton did is talked about the applied arts test, but then Lytton started talking about it in terms of points of novelty. And I think the intent of Lytton was good. Again, we're trying to increase objectivity in a very subjective area. And it appeared easy to apply because in Lytton, the court had just done an obviousness of Graham versus John Deere, and in the second prong, had just come up with specific points of novelty. So they were just sitting there waiting to apply. Well, in the design patent, we have a picture. Unlike the utility patent where we have words, of course, and construction is difficult because it's difficult to translate words. But when you have just a picture, it's even more difficult. But doesn't the point of points of novelty test coupled with the idea of claim construction, which really goes along with it, enable a fact finder to point out in the patent, to point out what it is that makes this distinct, points of novelty, claim construction, to point out in a way that mere visualization doesn't do it, but putting it into writing. And doesn't that facilitate adjudication of infringement of the design patent? That was the hope of Lytton systems. But as it turns out, it has failed the test of time. Well, counsel, I'd like you to expand on that. You keep mentioning six or seven times here about problems that juries are having. As I recall, in this case, we had summary judgment. We didn't even have a jury. So we don't have any jury instructions. We don't have any risk of jury confusion. We don't have any jury at all. Now, is there some evidence that wasn't in your brief that ever since Lytton, juries have been stumbling and fumbling and having difficulty applying this so-called point of novelty test? And if so, what is that evidence? Well, I would say that the test worked well before Lytton, and that the problem was that Lytton converted what was a workable test into a point of novelty test, where it then became important to determine specific points of novelty. And that's where we've run into all of the problems. What is the evidence that juries have been unable to apply the Lytton test? Well, I don't know of any specific evidence where a jury has been unable to apply it. But what I see in the case law is that there is confusion about how to determine what is a precise point of novelty when you have multiple possible points of novelty, combination, subset combination. There doesn't seem to be a principled way to do that. And if what we're looking for is consistency. Why is it different from any other litigation? The plaintiff proposes his point of novelty, saying whatever, and then the defendant says, no, I disagree. I think the correct point of novelty is this other thing. And if it's a matter of law, the judge decides. If it's a genuine factual dispute, the jury decides. What is the correct from what they're offered? Usually two alternatives. Now, maybe they do it well. Maybe they don't do it well. But why is that different from any other kind of legal issue or factual issue that goes to a jury? They get alternatives, and they get evidence on both sides. They get argument on both sides, and they make the best choice they can. Why is this any different? Two reasons. First of all, it's inconsistent with Gorham. In Gorham, you've got to look at the overall distinctive appearance. And if you're separating point of novelty from that, it violates Gorham as interpreted by applied arts. And the second reason. The Whitman-Saddle case didn't think they were inconsistent with Gorham. Same court. Gorham. That's true. But if you look at the key language in Whitman-Saddle, it's clear that they consider this pommel drop to be the only distinction from the prior art. So that was the distinction from the prior art. So there was that link. But the second reason, Your Honor, that we shouldn't go down the point of novelty test is we're looking for predictability. Well, we're already there. That's the precedent. So the question is whether the full court now overrules Litton and all the subsequent cases. And normally we don't overrule a precedent of a decade or more of standing unless there's been some intervening event, like a new Supreme Court case or a new statute, or, but rarely, where the practical application has proved to be a disaster. And then sometimes the appellate court sitting in back will revisit a test and overrule a precedent. That's why I'm asking you, what's the foundation that this has been such a disaster? Because as we have tried to apply the point of novelty test over different and diverse fact patterns, it's clear that there are fatal defects with it. And it has decreased predictability. It's clear to you, but I'm trying to make it clear to me. OK. We can't, there's no way to figure out a principled way to determine what the point of novelty is. And the pre-Litton test. Why isn't it principled enough that each side makes their contention, offers their proof, and then either the judge or the jury chooses? OK. Well, that would be a way, but I would just respect that. That is the way, and the question is whether that's fatally defective, just intolerable, unacceptable, chaotic. I don't see evidence that it's produced chaotic results in real cases. I don't see evidence that juries are routinely confused and unable to do it. OK. I would say the best evidence is the second question proposed by the court, where the court asks how do we do, how do we split the points of novelty? Can you have combinations? I don't know how to answer those questions. Mr. Oaks, one of the amici, Apple, I believe, said that there were eight times more non-infringement findings than infringement findings on summary judgment in this area. Is that good news or bad news? Well, it's difficult for me to answer that question without knowing exactly what the facts of the cases were and how the tests were applied. Well, I would have expected you to say, given that it's your position, that that's bad news, and then I would have expected you to tell us why. If it's bad news, why? Well, let me say that, again, I would have to know more about all the facts of the cases. That's what you're supposed to know when you come here. Well, let me just say that in terms of this case, it's been bad, because in this case, in this particular case, this point of novelty test was used by the court to isolate a single point of novelty that I believe was arbitrarily selected and that artificially narrowed the scope of the design patent, and it shouldn't have done that. And so in this particular case, I can say that it was bad. In this particular case, it should go to a jury under the principles of applied arts. So, counsel, you agree that the majority of all opinions that have to address this point of novelty, they're focusing on a single distinct element, which truly is novel in light of all the prior art and designs. It's really something different that exists. And those cases, I would imagine you'd agree, aren't really difficult to be decided. The point of novelty is clear. In fact, it's probably agreed to by everyone. It's these combination cases, and it seems to me these are becoming more and more the reality, aren't they? Yes, I agree. Occasionally you have a rare case, like Whitman-Saddell, where the court decides and looks at it and says there's just one single difference. And in that case, you don't have the problem of how to select the point of novelty. But in the usual case, where you have multiple pieces of prior art, and you have different possible points of novelty, including combination and subsets, it's just so hard to determine what the point of novelty is. I think it's time that is not properly spent in litigating a case, and if we can avoid that by going back to the pre-written test. Mr. Olk, you're down to just over five minutes of rebuttal time. So up to you whether you want to spend it or save it. If there are no other questions, I'll sit down. Thank you. Mr. Medlin. May it please the Court. My name is Frederick Linton Medlin. I'm with the law firm of Patrick Lockhart, Preston Gates, Ellis, and I represent the Appellees, George Swissa, and Swissa, Inc. The purpose of design patents is to protect what is inventive. You like the point of novelty test, right? Yes, Your Honor. I believe that it follows directly from the holding in Smith v. Whitman-Saddell. Isn't Whitman-Saddell consistent either with the point of novelty test or with this three-way test? I don't believe so, Your Honor. What they did in Whitman-Saddell was isolate the innovative element in the saddle, asked whether that innovative element was present in the accused design, found it was not. That is the point of novelty test. Well, isn't it equally consistent with the idea that they were looking to see whether the accused saddle was more similar to the prior art than to the patented design? Well, I don't think they expressed it in the terms of this three-way test. I'd submit this three-way test is unworkable. Why? Well... I mean, he can submit his opinion about how juries are confused, and you can submit your opinion about this, but it doesn't help us unless you can show some foundation for the concern. Well, let's consider how the test would work in reality. The fact finder, trying to put himself in the place of the ordinary observer, would look at the accused design, would look at the claimed design, would look at the prior art. All the prior art? Well, in reality, what's going to happen is this fact finder is going to focus on the nearest piece of prior art, the one that's closest to the accused design. And if the accused design is closer to the claimed design than that one piece of prior art, then the fact finder is going to find infringement. But there could be, out there in other pieces of prior art, not as close, all the elements. But isn't what Whitman's saddle tells you is that you can create a hypothetical piece of prior art if it would have been obvious to combine those other features in the prior art. And then you ask, you compare the accused device to see whether it's more similar to the hypothetical piece of prior art or to the patented design. Isn't that a perfectly sensible reading of Whitman, that that's what they did? Well, as I recall, Whitman, what they did was find the one element that wasn't in the prior art. Well, the first thing they did was to combine the two saddle pieces from the prior art, right? Well, the opinion is a little ambiguous on this. The way I read it is the Jennifer and the Granger saddles had never been combined precisely. It was common to combine the Jennifer saddle with other saddles. And they said it was obvious to combine them. And that's how I read Whitman's saddle. And then they said, okay, is this more similar to the combined Granger-Jennifer saddle or to the patented design? Well, they picked out the element, though, that wasn't in the combined Granger-Jennifer saddle, the sharp rock rear pommel, and said this has got to be what's inventive in the design. This inventive aspect is not in the accused design, and therefore there can't be infringement. And isn't that clearer than this more similar to or less similar to? Because then you've got a spectrum. And it's difficult to measure. It's difficult enough to look at a design patent and make comparisons. But trying to figure out where on a spectrum is extremely difficult. Well, again, I think it's completely unworkable and certainly unreviewable. What it does is take away the only objective check on what is in essence an equivalence analysis. Mr. Medlin, in the area of modern commercial design, there's very little new. Usually we're talking about combinations. Can a plaintiff, a design patent owner, claim a combination as the point of novelty? Yes. How do they do that? Well, first of all, let me distinguish this case from those sorts of cases. Fine. Let's not deal with this case where it's almost too simple to deal with the real cases we get. What about where it's very complex and there's a lot of minor variations? Well, when you've got a very close combination to the accused design in the prior art... I've combined many things from many areas. The combination's new, but you can find every single element. There's nothing new out there in designs. Well, once you get to a situation where you have no close piece of prior art and the combinations... There are many close pieces of prior art. Well, in that case, I would submit that the point of novelty is the difference between the nearest close piece of prior art and the claimed design. That, at most, would be the point of novelty. Why are we bringing validity-type analysis, and not even a validity analysis that's done at the PTO where they get these things, into an infringement test? Well, I would say this is a little different from a validity analysis, and I submit that one thing... When I'm comparing prior art, isn't that pretty close to validity? Well, in a validity analysis, we're asking, is there anything inventive in the design? And in an infringement analysis, we're asking whether what is inventive has been appropriated. Now, one thing I think this court could do in this case that would simplify matters and perhaps resolve a potential conflict between the statutory presumption of patent validity and the situation where you have patents with no scope under the infringement analysis is to instruct that you don't need to apply the point of novelty test or the non-triggerable advanced test in situations where the proposed... Excuse me, where the accused design is an exact duplicate of the claimed design. In that case, you don't need a point of novelty test because we presume there's something inventive in that claimed design. And since everything in the accused design is in the claimed design, then necessarily... But that doesn't happen either. There's always a minor variation. How do we deal with that when you've got nothing but a new combination? To put it a little bit differently, can the overall appearance be a point of novelty? As Judge Newman said in her dissent from the rehearing in Womack, a lot of design patents are combinations of old elements, as Judge Rader has pointed out. Can the overall appearance, this rearrangement of these prior elements, be a point of novelty? Well, certainly not when there's a very close piece of prior art and it's a small change over the prior combination. Then the point of novelty has to be at most a difference... I don't think you're answering the question. Can the overall appearance be a point of novelty? Was Lawman wrong in that respect? Well, I don't think the overall combination can be the point of novelty without dissolving the point of novelty test. But that's Gorham. I don't want to interrupt your train of thought. But you can't just wipe out Gorham and wipe out overall appearance, can you? Well, certainly overall appearance is important, Your Honor, and that's why we have the ordinary observer test. But the ordinary observer test only identifies when a patent might be infringing because it produces substantially the same effect in the eye. It does not answer the key question of whether the accused design has appropriated what's inventive in the claimed design. But if Gorham does point out the fact that it is substantially the same in the eye of the observer, why isn't that an infringement test? Because we don't know why it's substantially the same, Your Honor. Is it substantially the same because the inventive aspects of the claimed design have been appropriated by the accused design, or is it substantially the same just because both the claimed design and the accused design share old elements of the prior art that the patentee has no right to try to monopolize. But if it's confusingly similar, isn't it the same? Well, no, because, again, the design patent is only protecting what's new and inventive in the design. The statute itself only goes to original designs. If... I don't think that's accurate. It protects the design provided it's new. And now the question is is it new because of the overall appearance is bound to be different if, in fact, there is a point of novelty. But can't the overall appearance be difficult overall whether there are 20 or 40 differences as in Gorham with the floral design, or one as in Mitten? Well, again, Your Honor, once you say the overall design is the point of novelty, you completely collapse the point of novelty test into the equivalence analysis of the ordinary observer test. And I don't think then you have any objective criteria limiting this essentially an equivalence analysis. Counsel for Egyptian goddess said, yes, our objective here is to increase the objectivity of the test, but... Is there ever literal infringement in design infringement cases? Well, that's an interesting question. Literal infringement, any time you're applying in design patent law the ordinary observer test, you're in effect applying an equivalence analysis because the ordinary observer test subsumes an equivalence analysis. Well, there's no literal infringement because there's no literal, no letters, no words. Well, a panel of this court in Sun Hill Industries, Eastern Unlimited, pointed out that you can't apply the doctrine of equivalence, not the literal equivalence, literal infringement, the doctrine of equivalence in a design patent case unless you had in the accused design elements that were equivalent to the specific novel features. If you couldn't use the doctrine of equivalence to evade the point of novelty test. Well, similarly, you need the point of novelty test as a check on the equivalence analysis that's inherent in the ordinary observer test. Well, let me ask you this then. If the point is to prevent overuse, overextension of an equivalence analysis and if we make a comparison to utility patents, why isn't it the burden of the defendant to show that there'll be an overuse of concepts of equivalence rather than having it be part of the burden of proof of the patent owner so that whether it's a three-way test or whether it's the Linton test or whatever the right test might be, whose burden should it be? Why shouldn't it be the defendant's burden? I would say that whoever's burden it is, in this case, you can affirm because in this case, SWISA came forward with points of novelty, presented evidence as those points of novelty. The judge found there was no issue. In fact, it should be the burden though of the patentee. Infringement's always been the burden of the patentee and if it's essential to an infringement finding that what's invented in the claim design be appropriated in the accused design, then that should be part of the burden of proving infringement, just like in utility patent cases. But if I'm in a utility patent case, if I'm the accused infringer and I say by definition I can't be infringing under the doctrine of equivalence because I'm merely practicing the prior art or at most an obvious variation of the prior art, that's a good defense. It will win if I can prove it. So the analog would seem to be that you should have to prove. But doesn't the patentee seeking to prove infringement under the doctrine of equivalence have the ultimate burden of establishing that the range of equivalence he's seeking wouldn't ensnare the prior art? It seems to me that Judge Michelle's point is right on. Wouldn't your answer, and maybe I'm misunderstanding you, be the burden of proof always rests on the patentee, but the burden of production much like Wilson's sporting good in the utility context switches. Once the patentee has proven the doctrine of equivalence, if the defendant wants to articulate that no, this equivalent wouldn't be ensnared by the prior art, they have the burden of production, but not the burden of proof. Isn't that the right answer? The ultimate burden of persuasion still lies on the patentee to establish that his range of equivalence wouldn't ensnare the prior art. Well, not in utility patents. We don't expect the patentee to come forward with the evidence. So the burden of persuasion, but not the burden of production. Correct? Yes, Your Honor. Got it. Coming to this case, which is why we're here, if the point of novelty is defined as the oblong shape, the three-dimensional oblong shape, as distinguished from, let's say, the point of novelty of how many of those faces are covered with a buffer, you get quite a different result, don't you? So from that viewpoint, the point of novelty perhaps would affect the infringement burdens. However, when you look at the overall design, the overall dissimilarities far surpass the differences. So speaking now from the viewpoint of how to show non-infringement, which of these theories does one first decide, well, we think probably it doesn't infringe, therefore we'll cause the point of novelty to be the number of faces which are covered, or we think, after all, when you look at these two devices, they really do look the same because they both are overall oblong nail buffers. And that points to the risks you would have of not having a point of novelty test. If you were conducting an examination to say, well, what is inventive, or in this case, what could possibly be inventive in the claim design, and is that in the accused design? This is an unusual case in that the nearest prior arc, the nail co-buffer, is so close to the claimed design of patent, in this case. What was happening here, there was a nail co-buffer with its raised pads, its exposed corners, its hollow frame. Counsel, how could it be so close? It's a triangle. Even my five-year-old knows the difference between a triangle and a square. The patented design is a square. Doesn't the Supreme Court's forum test say, likely to be confusingly bought by someone else, or to be deceived? How could anybody be aware? It's such a significant difference between the prior arc. You're saying it's so, so similar, but the difference is overwhelming the similarities. Well, Your Honor, one does have a triangle and one has a square. What Adi Tortilla, the inventor of this patent did, was take this triangle buffer and take it back to the shape of its immediate predecessor, a square-ended buffer that was ubiquitous in the market at the time. Why aren't you arguing that the Falley buffer is the closest piece of prior arc? I'm having the same trouble as Judge Morris. Why are you focusing on this nail code buffer, which seems to be quite different? Well, because the nail code buffer had the raised pads. The nail code buffer had the exposed quarters. The nail code buffer had the hollow frame. The difference was the addition of a fourth side, and that was a fourth side that, importantly, did not have a padlet. Design patents have almost no scope. Adi Tortilla here didn't apply for a hollow square-ended buffer with pads on four sides, or a hollow square-ended buffer with pads on two sides. He applied for a patent and received a patent on a hollow square-ended buffer with pads on three sides. Yet, he proposes a point of novelty in this case that would expand that patent to include patents with raised buffers on four sides, patents with raised pads on two sides, impermissibly increasing the scope of his patent. And this is a result of trying to contrive a point of novelty rather than looking to the actual point of novelty between these buffers is created by comparing the patented design to the accused design to try to figure out what they've got in common. Why isn't the doctrine of validity adequate here? It sounds like your real complaint is that the purported inventor here really didn't invent anything. He just took well-known features from certain prior art and rearranged them in a perfectly simple, obvious way that probably could have been thought through in 30 seconds. So if your real beef is that this patent never should have issued, then your point of attack should be invalid for obviousness. Well, of course, when we moved for summary judgment in this case, we moved for summary judgment that the patent was invalid, that there could not possibly be infringement under the ordinary observer test because in the marketplace these were very different things, three-way and four-way buffers, and we moved for summary judgment on the grounds that the point of novelty had not been incorporated. If there was one, the district court only reached that one ground, but an invalidity analysis can't take the place of the point of novelty test. They ask fundamentally different questions. Suppose it was found that, yes, this buffer does have something inventive in it, this fourth side without a pad on it. Now... It's a little hard for me to imagine that it's truly inventive to have a four-sided buffer from which you just omit a four-sided device from which you omit one of the buffers. I think you're precisely correct in that, but my point is you could find a point of novelty here, yet it wouldn't solve our problem. The point of novelty... Yeah, but why doesn't validity solve your problem? Well, it would if, in this particular case, if the court found it invalid, but if the court found it valid based on the fact that it had a fourth side... Maybe the court would have found it invalid if it had reached it. Well, I think it would have, Your Honor. And in that case, then, I don't understand why you have to cling to the point of novelty test as some sort of super magic and definitely much better than the three-way test or any other designable test. Again, Your Honor, they answer different questions. You can easily imagine a situation where there was something inventive in a claim designed so that it wouldn't be held invalid, but that inventive element had not been appropriated by the accused design. Mr. Meadowland, the same question I asked before. If eight times as many non-infringement findings are made on summary judgment, is that good news or bad news and why? Well, in my opinion, Your Honor, the determining points of novelty, instead of being a fact question or the finder of fact, should be a matter of claim construction for the court. And I think there are a lot of situations where patentees trying to impermissibly increase the scope of their patents create points of novelty that aren't real points of novelty and that the percentage of summary judgments against them... Wouldn't the Chief Judge's suggestion make sense then? We won't allow the patentee to create points of novelty, but we'll make it a defense. Well, again, I stress, in this particular case, you can affirm even if you shift... You made that point, but the question is why not have the points of novelty sort of quasi- as a defense, not as a affirmative point of the plaintiff's burden. Well, again, it seems to me that a plaintiff should have to prove that what was inventive in his design was appropriated by the accused's design, and that it shouldn't be the burden of the defendant to prove he did not infringe. In other words, it can be relevant to both proving infringement and proving invalidity. Well, certainly the point of novelty in a patent can, yes, be very relevant to both inquiries, but they're different inquiries. But if the point of novelty inquiry that you're requesting really puts you in a position where the patentee has to establish the validity of the patent, isn't that really a burden, a shift of the burden of presumption of validity of the patent itself? Well, and again, I think there should be no point of novelty analysis when they're essentially identical designs and that that statutory presumption should govern. But I don't think that statutory presumption should extend to allowing a patentee to get some sort of incentive has been appropriated. I think he needs to bear the burden of showing, yes, not only was there something inventive in my patent, as the patent office tells us, but it was stolen. It was taken. But can't the patentee establish the infringement by the Gorham test? No, I think what the patentee is establishing with the Gorham test, with this equivalence analysis, is, yes, maybe there's some infringement here, but we don't know because the Gorham test has not answered this question of whether what's inventive in the claimed design has been taken by the accused design. I thought you said a moment ago that the point of novelty test wouldn't apply if the accused design was essentially equivalent to the prior art. Did I understand you correctly? No, I'm sorry. What I mean is that if the challenge, the accused design, is essentially identical to the claimed design, then you shouldn't apply the point of novelty test. But that's the Gorham test, isn't it? Well, yes, but in that case... So we don't need the point of novelty test because everything's subsumed under the Gorham test. No, only if they're essentially identical designs, because if they're essentially identical, it's a virtual duplicate of the claimed design, then we know that whatever presumed inventiveness the patent office gives us this presumption... What's the difference between that and the Gorham test? Essentially the same... Well, in that case, you are just applying the Gorham test because you know... So we don't need the point of novelty test when we apply the Gorham test? So there's no need for the point of novelty test ever? Oh, no, no, not at all. Only in that very limited circumstance where the challenge design is essentially a duplicate of the claimed design. And the reason is, in every other case, once you get any variance from the claimed design and the accused design, then the issue arises, well, they look similar, but is what was inventive in the claimed design, has it been appropriated by the accused design? So why not make that in a way an affirmative defense? Well, again, as a practical matter, defendants do come forward with their own proposed points of novelty, they do put in lots of evidence, certainly we did in this case, but it seems to me a plaintiff suing on his patent, saying my patent has been infringed, has the burden of showing that what was taken with regard to his patent was what the patent protects, the inventive aspect, and that it shouldn't be a defendant's burden to establish that he, no, I didn't take that. It seems to me that the point of novelty test lends itself to all sorts of gamesmanship where the patentee is obviously going to point to a point of novelty based upon the accused structure, the accused is going to point to all sorts of different points of novelty to establish that it's not an infringer. How does one, in the context of cases where there are multiple pieces of prior art, how does one determine what the point of novelty is without this sort of gamesmanship? Well, it becomes much more difficult once we get far from the facts of this case where there's a very close piece of prior art where there's several pieces of prior art that are much more distant from the plain design. Even in this case, even in this case we have just a few references that have been pointed to as principle references, but of these various pieces of prior art, we have not been able to determine what the point of novelty is without  reference of this piece of prior art. So, I would say that the thing you have to do is create a point of novelty that leaves out the real difference between the two patterns, and I think it's a fundamental principle here. This work should again hold that the difference between the plain design and the prior art is how you establish the point of novelty. That sounds good in theory, but again, I'm not getting a lot of help here in trying to discern how you go about doing that. Well, again, I believe in this case- I can see differences with all of these references, and you could make up little lists. Okay, let's see the differences between this one. Let's see the difference between this one. And, but I don't know and then in terms of trying to reach a conclusion as to what's the proper point or points of novelty, what methodology leads to the right answer? Well, I would say the difference between the closest piece of prior art and the plain design is at most the point of novelty. Now, that test, though very useful in this case, I would submit, admittedly, it's more difficult when there's not a very close piece of prior art. Time is expiring. We thank you for your argument. We'll hear a rebuttal from Mr. Oak. Thank you, Your Honor. Please report. The problem is that we don't know how to determine what is the closest piece of prior art in this case. The opposing counsel argues that it's the Enelco buffer with the triangular piece, but there's a clear difference in a square cross-section and a triangular cross-section, and it might also be argued that the Paddle buffer block is the closest piece of prior art. So that's the problem at the point of novelty test. Now, the validity aspects of this patent were discussed briefly, and I'd like to briefly address that. In this case, this patent is not invalid because under this court's validity jurisprudence, you have to start first, you have to have a primary reference or a Rosen reference that is basically the same as the patented design, and in this case, you do not have a reference that is basically the same. The valid buffer block does not have it's not hollow, and it doesn't have ranged paths, and the Enelco patent is triangular cross-section and not square cross-section. Counsel, if a defendant argues a different point of novelty, say a patentee comes forward and says, this is my point of novelty, and the defendant says, well, that can't be your point of novelty, it must be this. Haven't they effectively admitted at that point the patent is not invalid? Doesn't that create a real difficult position for defendants if they suggest a point of novelty? Aren't they, in fact, admitting that the patented design is, in fact, novel? Well, I would suggest that there's a distinction between being novel and being non-obvious, and simply because a patent may be novel, it still may be non-patentable because it's obvious, and so you have to pass the non-obviousness test. There was also a lot of talk about the burdens of proof, and let me just say that in safeguards, in my view, I agree that the ordinary observer test needs a safeguard, but this test that we have advocated out of Gorham as described by Applied Arts does have an effective safeguard, because what you're doing is you are asking whether the accused's design presents the appearance or overall visual effect that distinguishes the patent design from the prior part. That's an effective safeguard. Now, to the extent, I suppose, if you needed an additional safeguard, that the accused device was in the prior art or obvious over the prior art, you could use a Spalding sporting goods, but in the utility patent context, remember that the hypothetical claim construction out of Spalding goods, you are comparing the accused device with the prior art. Mr. Oak, even if we reject the non-trivial test and object the point of novelty test, do you see any reason we need to send this back? Why can't we affirm the district judge's finding? Because there's a question of fact. Why can't the district judge, looking at the record, see that that fact is something on which there's no legitimate dispute? In appropriate cases, the district court could, but this is not an appropriate case. How do we know? You mentioned in your opening argument, predictability was an objective and an important objective here, and I think we'd all agree with that. But what does your test give us in terms of predictability? For example, you say, well, this is clearly a question of fact that can't be resolved in a summary judgment, but suppose that your patent had only two sides, that it had four sides, but only two of them were covered. Would it be, in your view, still a question of fact for the jury, or could summary judgment be it? What's the predictability? Tell me, give me a nice sharp, predictable answer to that question. Well, I wish I could. Well, isn't that the problem? This is a subjective area, and that's the problem. But I will say this. If it just had two sides, then you are losing, you would be losing a distinctive characteristic of this design patent, because it has three sides, you've got raised pads with these open gaps in the corner. And so that is creating this overall distinctive appearance, and that's what it shares with the accused design. Well, you'd have one open gap instead of two. That's correct, but you would still have these, you'd still have these two open gaps between the raised buffers, and that, with the hollow cross section, and the square cross section, and the raised buffer pads, that is what creates the distinctive appearance from anything that had ever gone before it. And that's what the accused buffer appropriates. And that's why, in my view, and so that's why there's a question of fact. Thank you. We'll take the appeal under submission. All rise. The Honorable Court is adjourned until tomorrow morning at 7 o'clock.